UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DELPHINE WATSON,
    *Plaintiff*,

v.

SENIOR PHILANTHROPY OF
WESTPORT, LLC,
    *Defendant.*

No. 3:23-cv-31 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Delphine Watson ("Plaintiff") has sued her former employer, Senior Philanthropy of Westport, LLC ("Senior Philanthropy" or "Defendant") for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practice Act ("CFEPA"). *See* Ex. A to Notice of Removal, ECF No. 1 at 7 ("Compl.").

Senior Philanthropy has filed a motion to dismiss the Complaint on the grounds that Ms. Watson failed to file a timely administrative appeal, failed to exhaust her administrative remedies, and has not stated a plausible claim for relief. *See* Def.'s Mot. to Dismiss, ECF No. 15.

For the following reasons, Senior Philanthropy's motion to dismiss is **GRANTED in part** and **DENIED in part**.

Although the Court rejects Senior Philanthropy's jurisdictional arguments for dismissing Ms. Watson's Complaint, the Court *sua sponte* dismisses Ms. Watson's CFEPA claims without prejudice for lack of subject matter jurisdiction.

The Court also dismisses Ms. Watson's disability discrimination claims without prejudice, although the Court will allow her retaliation claims to proceed.

If Ms. Watson believes that the defects identified in this Ruling and Order can be cured, she may file an Amended Complaint by **September 8, 2023**. In order to correct the jurisdictional defects with her CFEPA claims, Ms. Watson must attach a release of jurisdiction from the CHRO to any Amended Complaint.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

   **A.  Factual Allegations**

According to the Complaint, Ms. Watson was previously employed by Senior Philanthropy, where her job responsibilities involved scheduling. *See* Compl. ¶¶ 4–6, 8.

In January 2019, Ms. Watson allegedly filed a charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *Id.* ¶ 3.[1]

In February 2019, Ms. Watson was allegedly directed to modify the schedule for nurses' shifts. *See id.* ¶ 4. Even though she allegedly knew that this modification was incorrect, Ms. Watson allegedly made the requested change. *See id.* Ms. Watson was later disciplined after her supervisor denied directing Ms. Watson to make this modification to the schedule. *See id.* ¶¶ 4–7.

In March 2019, two months after filing her complaint with the CHRO, Ms. Watson was allegedly terminated. *See id.* ¶ 8. She alleges that she was set up for failure by Senior Philanthropy, that her employer's stated reason for terminating her was not true, and that she was, in fact, terminated for engaging in a protected activity. *See id.* ¶¶ 8–9.

---

[1] Although Ms. Watson's Complaint does not describe her January 2019 CHRO charge, Senior Philanthropy states in its motion to dismiss that this charge alleged disability discrimination. *See* Mastrony Decl. ¶ 5, ECF No. 15-1 at 16. "[I]n adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

In August 2019, Ms. Watson filed another charge with the CHRO (the "August CHRO Complaint"), alleging that she was terminated in retaliation for filing her prior CHRO complaint (the "January CHRO Complaint"). *See* Ex. 1 to Mastrony Decl., ECF No. 15-1 at 20 ("August CHRO Complaint").

On August 3, the CHRO dismissed Ms. Watson's August CHRO Complaint after finding "no reasonable cause" for believing that a discriminatory practice had been committed. *See* Ex. 2 to Mastrony Decl., ECF No. 15-1 at 46 ("No Reasonable Cause Finding").

### B. Procedural History

On December 9, 2022, Ms. Watson filed her Complaint in Connecticut Superior Court.[2] Compl.

On January 9, 2023, Senior Philanthropy removed the case to federal court on the basis of federal question jurisdiction. Notice of Removal, ECF No. 1.

On February 16, 2023, Senior Philanthropy filed a motion to dismiss the Complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. to Dismiss; Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 15-1 ("Mem.").

Ms. Watson has not responded to Senior Philanthropy's motion to dismiss.[3]

---

[2] Although Ms. Watson's Complaint is dated November 16, 2022, Compl., ECF No. 1 at 8, the summons was issued by the Superior Court clerk on December 9, 2022, Ex. A to Notice of Removal, ECF No. 1 at 4 ("Summons"). Connecticut Superior Court records indicate that Senior Philanthropy was served on December 14, 2022. *See* Return of Service, *Watson v. Senior Philanthropy of Westport LLC*, No. FBT-CV-23-5050476-S (Conn. Super. Ct. Dec. 21, 2022), Entry No. 100.32. The return of service and the Complaint were later docketed by the Connecticut court on December 21, 2022. *See Watson v. Senior Philanthropy of Westport LLC*, No. FBT-CV-23-5050476-S (Conn. Super. Ct.), Entry Nos. 100.31, 100.32.

[3] Under Local Rule 7(a)2, "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The Court may also, however, resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4

555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."). "Where, as here, the complaint was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.,*

5

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Senior Philanthropy argues that Ms. Watson's Complaint should be dismissed because (1) Ms. Watson failed to timely appeal the denial of her August CHRO Complaint; (2) Ms. Watson failed to adequately exhaust her administrative remedies before filing suit; and (3) the Complaint fails to state a plausible claim of disability discrimination. *See* Mem. at 1.

The Court will address each issue in turn.

### A. Timeliness of an Administrative Appeal

When the CHRO dismisses a complaint, the complainant may seek further review of that order by filing an appeal in the Connecticut Superior Court. *See* Conn. Gen. Stat. §§ 46a-94a(a), 4-183(c). In its motion to dismiss, Senior Philanthropy asserts that that Ms. Watson did not file an administrative appeal from the CHRO's denial of the complaint she filed in August 2019. *See* Mem. at 5; Mastrony Decl. ¶ 8. Ms. Watson has not contested this assertion. After the deadline for filing an administrative appeal had passed, Ms. Watson initiated this civil action, in which she asserts the same claims presented in the August CHRO Complaint. *See* Compl. Senior Philanthropy contends that Ms. Watson's failure to challenge the denial of her administrative claim prevents the Court from exercising subject matter jurisdiction over her CFEPA claims. *See* Mem. at 6.

The Court disagrees.

As a threshold matter, Senior Philanthropy does not argue that the failure to administratively appeal to the Connecticut Superior Court constitutes a failure to exhaust

available administrative remedies.[4] In order to "exhaust her state administrative remedies . . . a plaintiff must timely file a complaint with the [CHRO]; if the CHRO issues a release of jurisdiction, then a plaintiff may bring suit in court." *Duarte v. W. Conn. Health Network*, No. 3:16-cv-01757 (JAM), 2017 WL 3499937, at *1 (D. Conn. July 11, 2017). Senior Philanthropy has not identified any Connecticut law that requires a complainant to appeal to the Superior Court before obtaining a release of jurisdiction from the CHRO. *See* Conn. Gen. Stat. § 46a-101(b) (providing procedures for requesting a release).

Senior Philanthropy instead contends that an administrative appeal is the only way for a complainant to continue to pursue the claims she raises in a CHRO complaint.

Connecticut law appears gives a CHRO complainant who receives a final order of dismissal the choice between (1) pursuing her administrative complaint through an appeal to the Connecticut Superior Court and (2) filing an original civil action in state or federal court after obtaining a release of jurisdiction. *See Sebold v. City of Middletown*, No. 3:05-cv-1205 (AHN), 2007 WL 2782527, at *19 (D. Conn. Sept. 21, 2007) ("A complainant who receives a final order of dismissal from the CHRO may appeal to the Superior Court. A complainant may also file an original action with the Superior Court . . . ." (first citing Conn. Gen. Stat. § 46a-94(a); and then citing Conn. Gen. Stat. §§ 46a-100, 46a-101)). *But see Grande v. Hartford Bd. of Educ.*, No. 19-cv-00184 (KAD), 2020 WL 70815, at *4 (D. Conn. Jan. 7, 2020) ("Indeed, there does not appear to be either a statutory or regulatory procedure for obtaining a release of jurisdiction once the agency has issued a final decision.").

Ms. Watson's Complaint indicates clearly that she has chosen the second option. Her Complaint is not styled as an appeal, and she brings this action against Senior Philanthropy

---

[4] The employer does argue that Ms. Watson failed to properly exhaust her administrative remedies, but for different reasons. The Court will address that argument below.

rather than against the CHRO. *See Page v. Mount Vernon Money Ctr.*, No. CV-06-5001014, 2006 WL 1608958, at *1 n.2 (Conn. Super. Ct. May 23, 2006) ("Although the plaintiff does not specifically cite the statutes upon which she seeks relief, count three cannot be read as an appeal from a final agency action and thus must be read as a direct claim to the Superior Court made pursuant to General Statutes § 46a-100."); *Gur v. Nemeth-Martin Pers. Consulting, Inc.*, No. CV-98-0331118-S, 2001 WL 357356, at *2 (Conn. Super. Ct. Mar. 20, 2001) (construing a complaint as a "separate de novo action," even though the plaintiff cited the statute providing for administrative appeals, because, *inter alia*, "the plaintiff did not name the CHRO" as a defendant in the action and "the plaintiff did not plead the action as an administrative appeal").

When a plaintiff files a complaint under section 46a-100, "[t]he CHRO's decision is not being reviewed by the court, and the current lawsuit before the court is a *de novo* adjudication." *Thayer v. Electro-Methods, Inc.*, No. CV-04-0830647-S, 2004 WL 3105966, at *4 (Conn. Super. Ct. Dec. 7, 2004); *see also Powell v. Univ. of Conn. Sch. of Med.*, No. HHD-CV-07-4030390-S, 2008 WL 4635458, at *3 (Conn. Super. Ct. Sept. 23, 2008) ("In August 2005, the CHRO denied her claim and a subsequent motion for reconsideration, and ultimately issued a release of jurisdiction allowing her to pursue a *de novo* action in Superior court."). Thus, the time limits cited by Senior Philanthropy for filing an administrative appeal with the Connecticut Superior Court are not applicable in this action.

Beyond arguing that Ms. Watson may not raise her CHRO retaliation claims again in court, Senior Philanthropy does not argue that the CHRO's "no reasonable cause" finding— which appears to have been made without a hearing—has preclusive effect in a subsequent civil action under section 46a-100. *See also Rzayeva v. Foster*, No. 3:97-cv-1385 (AWT), 2000 WL 565223, at *6 (D. Conn. Mar. 27, 2000) ("The plaintiff was never given the opportunity to

8

present testimony, offer depositions or make oral argument before the CHRO. Therefore, the CHRO's findings do not preclude the plaintiff from further litigating the issues raised by the plaintiff in her CHRO complaint."), *aff'd sub nom. Rzayeva v. Santos*, 67 F. App'x 75 (2d Cir. 2003).

Accordingly, the Court will deny Senior Philanthropy's motion to dismiss based on Ms. Watson's failure to timely appeal the CHRO's denial of her claim.

Nonetheless, Senior Philanthropy's arguments indirectly raise a different jurisdictional problem with Ms. Watson's CFEPA claim. "Following Connecticut precedent, the courts of this District have concluded that, unlike in the Title VII context, exhaustion of administrative remedies *is* to be treated as a jurisdictional requirement for a plaintiff's CFEPA claim, and duly have held that no CFEPA claim may be heard by the District Court absent a release of jurisdiction by the CCHRO." *McVay v. Stefanou*, No. 3:20-cv-00764 (CSH), 2021 WL 3260852, at *8 (D. Conn. July 30, 2021). Here, Ms. Watson has not attached to her Complaint a copy of the CHRO's release of jurisdiction letter, nor does she allege that she received such a letter. *Cf. Grande*, 2020 WL 70815, at *4 ("Indeed, there does not appear to be either a statutory or regulatory procedure for obtaining a release of jurisdiction once the agency has issued a final decision."). Thus, notwithstanding the special solicitude that courts must afford to *pro se* plaintiffs, the Court will dismiss Ms. Watson's CFEPA claims without prejudice.[5] *See Duarte*, 2017 WL 3499937, at *1 (dismissing a *pro se* plaintiff's CFEPA claims because "Plaintiff's

---

[5] Ms. Watson's failure to allege exhaustion of her administrative remedies does not require the dismissal of her ADA claims. The Second Circuit has held "in the employment discrimination context that 'the exhaustion requirement, while weighty, is not jurisdictional.'" *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) (quoting *Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000)). Thus, a plaintiff is "not required to demonstrate at the pleading stage that [her] claims were administratively exhausted." *DiPetto v. U.S. Postal Serv.*, 383 F. Appx. 102, 104 (2d Cir. 2010) (summary order) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

9

complaint does not attach a copy of a release of jurisdiction letter from the CHRO, nor does the complaint allege that plaintiff received such a letter").

If Ms. Watson believes that she has properly obtained a release of jurisdiction from the CHRO, she may file an Amended Complaint with the release of jurisdiction from the CHRO attached.[6]

Accordingly, the Court will deny Senior Philanthropy's motion to dismiss on non-exhaustion grounds.

## B. Administrative Exhaustion

Senior Philanthropy also argues that Ms. Watson failed to exhaust her administrative remedies because her August CHRO Complaint did not sufficiently set forth the factual basis for her claims. The employer argues that the CHRO Complaint "did not contain a single reference to disability discrimination" or allege that Ms. Watson was disabled. Mem. at 8. Thus, according to Senior Philanthropy, Ms. Watson's disability discrimination claims in this action are not "reasonably related" to those alleged in her administrative complaint and cannot be pursued in this Court. *See id.*

The Court disagrees.

"A plaintiff has sufficiently exhausted the available administrative remedies when the plaintiff's claims were either included in an EEOC [or CHRO] charge or are based on conduct subsequent to the charge which is reasonably related to that alleged in the EEOC [or CHRO]

---

[6] Senior Philanthropy attaches to its motion to dismiss a notice of a right to sue from the United States Equal Employment Opportunity Commission ("EEOC"). "A 'right to sue letter from the EEOC . . . does not permit a person to file a claim with the Superior Court on an employment discrimination cause of action without a release of jurisdiction from the CHRO . . . [because] [t]he right to sue from the EEOC has no legal significance under [the CFEPA].'" *Sebold*, 2007 WL 2782527, at *19 (alterations in original) (quoting *Dichello v. Marlin Firearms Co.*, No. CV-06-5002796-S, 2007 WL 429301, at *4 (Conn. Super. Ct. Jan 22, 2007)). Thus, the EEOC's right to sue notice is not sufficient, and Ms. Watson must provide a release of jurisdiction from the CHRO in order to proceed on her CFEPA claims.

charge." *Koenig v. City of New Haven*, No. 3:13-cv-1870 (JCH), 2016 WL 8716200, at *2 (D. Conn. Apr. 1, 2016) (internal quotation marks omitted). Ms. Watson's August CHRO Complaint is nearly identical to her Complaint in this action. *Compare* August CHRO Complaint ¶¶ 1–12, ECF No. 15-1 at 25–26, *with* Compl. ¶¶ 1–12. Thus, there is no question that Ms. Watson's claims in this action were "included in" her CHRO charge. Senior Philanthropy's argument that both the August CHRO Complaint and the Complaint in this case do not sufficiently allege disability discrimination will be considered below.

### C. Sufficiency of the Allegations

In her Complaint, Ms. Watson asserts claims under two different CFEPA provisions, Connecticut General Statutes sections 46a-60(b)(1) and 46a-60(b)(4). *See* Compl. ¶¶ 13–14. These provisions prohibit both (1) direct discrimination based on an employee's disability and (2) retaliation for engaging in a protected activity. Sub-section (b)(1) makes it unlawful for an employer to, among other things, "discharge from employment any individual . . . because of" that individual's disability. Sub-section (b)(4), meanwhile, prohibits an employer from discriminating or retaliating against any person "because such person has opposed any discriminatory employment practice or because such person has filed a complaint [with the CHRO]."

Ms. Watson also alleges that Senior Philanthropy violated the ADA, which likewise provides for both disability discrimination and retaliation claims. *See* Compl. ¶ 15; 42 U.S.C. § 12112(a) (prohibiting discrimination "on the basis of disability" with respect to hiring, advancement, discharge, and other aspects of employment); 42 U.S.C. § 12203 (prohibiting retaliation against an individual who has "opposed any act or practice made unlawful by this chapter or . . . made a charge . . . in an investigation, proceeding, or hearing under this chapter").

11

In its motion to dismiss, Senior Philanthropy argues that the Court should dismiss Ms. Watson's claims under section 46a-60(b)(1) and the ADA because Ms. Watson has not sufficiently alleged a *prima facie* case of discrimination under these statutes. *See* Mem. at 9. The employer contends that Ms. Watson has not alleged that she suffers from a disability, that she was otherwise qualified to perform her job, or that she was terminated "because of" any disability. *See id.* at 10–12.

The Court agrees, in part.

Courts analyze both ADA and CFEPA claims under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (applying *McDonnell Douglas* to an ADA discrimination claim); *Levy v. Comm'n on Hum. Rts. & Opportunities*, 236 Conn. 96, 108 (1996) (noting that *McDonnell Douglas* applies to CFEPA disability discrimination claims).

In order to make out a *prima facie* case for disability discrimination under this framework, a plaintiff must establish that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). At the pleading stage, however, a plaintiff is not required to plead even "a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Rather, because 'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell*

*Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015)).

Ms. Watson's disability discrimination claims cannot clear even this low bar. As Senior Philanthropy points out, Ms. Watson does not allege that she has a disability under the ADA or CFEPA. Furthermore, she does not allege that she was terminated because of any disability. Instead, Ms. Watson alleges that she was terminated "in retaliation for engaging in a protected [activity]" and "for exercising [her] civil rights and filing the CHRO complaint." Compl. ¶¶ 11–12.

Although these allegations do not state a claim for direct disability discrimination, Ms. Watson has adequately pled a retaliation claim under both the ADA and CFEPA. Retaliation claims and unlawful termination claims are both analyzed under the *McDonnell Douglas* framework, although with different specific elements. To establish a *prima facie* retaliation claim, a plaintiff mush show: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999). But as noted above, a plaintiff need not plead every element of a *prima facie* case; the Complaint "need only give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 306). "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Id.* at 90 (quoting 42 U.S.C. § 2000e-3(a)).

The Second Circuit's articulation of this pleading standard makes clear that a plaintiff need not allege that they are disabled in order to plead a retaliation claim. It is sufficient to plead that the plaintiff engaged in a protected activity and suffered retaliation as a result. Ms. Watson has alleged these elements, and her allegation that she was terminated only two months after filing a CHRO complaint is sufficient to render her claim plausible at this stage of the litigation. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010) (holding that a plaintiff "sufficiently alleged a causal connection between her protected complaint . . . and her termination" when she lodged her complaint "at most two months" before she was terminated).[7]

Senior Philanthropy does not address the standard for pleading a retaliation claim in its motion to dismiss. Furthermore, by arguing only for the dismissal of Ms. Watson's claim under Connecticut General Statutes section 46a-60(b)(1), the employer appears to concede that Ms. Watson has sufficiently pled a retaliation claim under section 46a-60(b)(4) (and under the ADA's corresponding retaliation provision). *See* Mem. at 9.

Accordingly, the Court will dismiss Ms. Watson's disability discrimination claims without prejudice to renewal. The Court will, however, allow Ms. Watson's retaliation claims to proceed. As noted above, the Court cannot exercise subject matter jurisdiction over Ms. Watson's CFEPA claims. Thus, this ruling affects only Ms. Watson's ADA claims. To the extent that Ms. Watson files an Amended Complaint with a proper CHRO release from jurisdiction letter attached, the Court will allow her CFEPA retaliation claim to proceed as well.

---

[7] Ms. Watson does not allege explicitly that her January CHRO Complaint was based on alleged disability discrimination, as required to show that the complaint was a protected activity under the ADA. Nonetheless, because Senior Philanthropy acknowledges in its motion to dismiss that the January CHRO Complaint alleged disability discrimination, the employer cannot complain that it lacked "fair notice of the nature of the claim" or the "grounds on which the claim rests." *Twombly*, 550 U.S. at 555 n.3 (internal quotation marks omitted).

## IV.     CONCLUSION

For the foregoing reasons, Senior Philanthropy's motion to dismiss is **GRANTED in part** and **DENIED in part**.

Although the Court rejects Senior Philanthropy's jurisdictional arguments for dismissing Ms. Watson's Complaint, the Court *sua sponte* dismisses Ms. Watson's CFEPA claims without prejudice for lack of subject matter jurisdiction.

The Court also dismisses Ms. Watson's disability discrimination claims without prejudice, although the Court will allow her retaliation claims to proceed.

If Ms. Watson believes that the defects identified in this Ruling and Order can be cured, she may file an Amended Complaint by **September 8, 2023**. In order to correct the jurisdictional defects with her CFEPA claims, Ms. Watson must attach a release of jurisdiction from the CHRO to any Amended Complaint.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August, 2023.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE